# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

ranello@maglaw.com
(212) 880-9520

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON D.C.
**ALSO ADMITTED IN CONNECTICUT

December 11, 2023

The Honorable William F. Kuntz, II
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Saidazim*, 21-CR-564 (WFK)

Dear Judge Kuntz:

I represent Dela Saidazim, who is scheduled to be sentenced by this Court on December 13, 2023. I write respectfully to request leave to file this supplemental sentencing submission in response to the government's letter dated December 6, 2023 ("Gov.") in response to Dela's submission on December 4, 2023 ("Mem.). I further write to inform the Court of recent developments reflecting Dela's positive self-rehabilitation, and to provide the Court with a letter from the Aleph Institute ("Aleph") (attached as Exhibit 1).[1]

Aleph is an organization that provides alternative sentencing recommendations and services for defendants reintegrating into society. Aleph contacted Dela's counsel after hearing her story, and in the accompanying submission, Aleph recommends that the Court impose a non-incarcerative sentence. Aleph did not ask Dela' counsel what to recommend, and its recommendation differs from counsel's request, but Aleph's recommendation confirms that additional institutional incarceration for Dela is not needed to serve the purposes of sentencing.

## I. The Parties Do Not Dispute the Pertinent Facts, Which Support a Time-Served Sentence

The government does not dispute (but unfortunately largely asks this Court to disregard) the many facts that support a time-served sentence in this case. Thus, Dela's "history and characteristics," as set forth in the sentencing memorandum submitted on Ms. Saidazim's behalf and as set forth in the PSR, are entirely undisputed. [redacted]

[1] As this filing has sensitive personal and medical information, I request leave to file the unredacted version under seal. I indicate below in grey highlighting which portions of the letter should be redacted on the public docket.



[redacted]

The relevant facts relating to the offense conduct also are undisputed. For example, undisputed is that: the other defendants owned, ran, and designed the operations of the company and began engaging in the unlawful conduct years before Dela joined, and continued after she left; Dela went to Russia to care for her mother and without any intent to engage in wrongdoing; for months after she was hired, Dela served as a doctor recruiter without any knowledge that the company was engaged in unlawful conduct; [redacted]; Dela received no share of the company's profits and received only a meager salary whereas her boss and others made millions; Dela was never more than a personal assistant and low-level employee who "had no decision-making authority" and acted "at the direction of her co-conspirators" without understanding the full scope of her co-conspirators' conduct, PSR ¶ 24;[2] and Dela had nothing to do with the design and "sophistication" of the illegal operations—which, according to the government, was designed and implemented by the "sophisticated" owners years before Dela started at the company.

Finally, the parties do not dispute the facts underlying Dela's difficult two and a half years in the MDC and on house arrest, or her self-rehabilitation during that time. The government does not deny that Dela was subjected to putrid conditions for nearly three weeks in solitary confinement at the MDC. It agrees that her "initial home detention may have been restrictive," Gov. at 11, [redacted]. It also does not dispute that, after this Court admonished Dela that she would regret it if she failed to follow Court orders (regarding her first application to leave home confinement for Thanksgiving), Hearing Tr. at 11-12 (Nov. 19, 2021), she abided strictly by your Honor's rules and never once violated the trust she earned. As a result, the Court gradually gave Dela more freedom as she showed she was deserving of trust by finding a job and strictly abiding by the conditions of release.

Although the government suggests that the Court should ignore all these extraordinary facts and mechanically apply the Guidelines, the caselaw, Section 3553, and your Honor's own careful analysis in prior, analogous situations suggests a different approach is appropriate. *See, e.g.*, *United States v. Scott*, No. 20-cr-51 (WFK), 2023 WL 4758766, at *8 (E.D.N.Y. July 25, 2023) (Kuntz, J.) ("The Court has premised its sentence around the nature and characteristics of *this* Defendant and of the instant crime of conviction." (emphasis in original)).

[2] The government responded to Ms. Saidazim's objections to the PSR on December 8, 2023, after Dela's sentencing submission was filed with the Court. Therein, the government agrees with, does not oppose, or takes no position on the majority of Ms. Saidazim's objections. The sole disagreement relevant here relates to whether the loss amount and offense level substantially overstate the seriousness of Dela's offense, which is addressed below.

The Court should afford significant weight to these facts that warrant a time-served sentence. As to the offense conduct, the government's submission strongly implies that your Honor should treat Dela's role as being broader than it was based primarily on her physical proximity, as a personal assistant, to the now-indicted leader of the company. Gov. at 2-4. The undisputed facts in the PSR, however, show otherwise. They demonstrate that Dela was a low-level personal assistant with no discretion or authority. Indeed, the PSR and the view of Dela as a low-level person functioning at the "direction" of the founders and architects of the operation is consistent with the current version of the pleadings recently filed by the government.

The government's recently filed superseding indictment ("S3 Indictment") reinforces that Dela's role was limited. The original complaint wrongly alleged that Dela, for example, conspired to "devise [the] scheme" and "directed the actions of others." Compl. & Aff. (Dkt. Min. Entry June 9, 2023). The S3 Indictment, on the other hand—which names as defendants mutliple of the company's allegedly high-ranking leaders—suggests that the government learned in its investigation that Dela acted only "at the direction of" her boss and others as a physician recruiter and "*personal assistant*." S3 Indictment ¶ 11(g) (emphasis added). These facts and others were incorporated into the PSR, which found (without objection) that Dela was a minor participant acting at others' direction with no discretion.

In its sentencing memorandum, the government argues that the Court should rigidly apply the Guidelines and ignore the undisputed facts necessary to make an individualized assessment of Dela. For example, the government says that a "minor participant" reduction alone suffices to reduce Dela's sentencing exposure, but this mechanical application of the Guidelines contravenes controlling law, namely that the Guidelines are not to be presumed reasonable and courts must make an "individualized assessment based on the facts presented" under Section 3553. *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, the advisory Guidelines range, even with the minor-role reduction, substantially overstates Dela's culpability.

The government also does not contest that Dela was subjected to putrid conditions for the nearly three weeks she was in solitary confinement in the MDC and agrees that her "initial home detention may have been restrictive." Gov. at 11. It argues, however, that her home detention was not sufficiently difficult. Gov. at 11. This argument fails, however, to account for the fact that Dela is not comparable to a defendant on house arrest because she was separated by continents from her family, and particularly her mother. The government says that Dela's home confinement was not difficult because, after 15 months—once she had earned your Honor's trust and that of Pretrial Services—the Court allowed her to go to work and later converted her home detention to a curfew. This argument disregards how over the last two and a half years the Court gradually gave Dela more freedom as she continued to show that she was deserving of trust by

[3]

finding a job and abiding by all conditions of her release. Contrary to the government's assertions, the last two and half years have been incredibly difficult for Dela—who has lived without family members and few friends—but she has shown that she has learned from her mistakes.

## II. The Court Should Not Consider Loss Figures from Outside the PSR

The government, Probation Department, and Dela have agreed that the applicable loss amount was over $25 million. Relying on its own allegations in the S3 indictment, while acknowledging it is something about which Dela did not have notice, the government now suggests, without offering evidence, that it potentially could have held Dela "responsible for over $250 million in actual losses or over $550 million in attempted losses." Gov. at 9. These inflated figures, however, do not appear in the PSR, and the government has not provided evidence supporting them to defense counsel, the Probation Department, or the Court. Thus, the Court should expressly state that it is not relying on these unsupported assertions regarding loss. *See* Fed. R. Crim. P. 32(i)(3)(B).

The Court also should take into account that the Guidelines loss table does not accurately measure culpability. Mem. at 32-35. Primarily relying on the differences in the Guidelines sentencing ranges, the government attempts to distinguish only a few of the many cases cited in Dela's sentencing memorandum—apparently conceding the applicability of the remaining analogous cases. The government argues that *Onaga* and *Scott* are distinguishable primarily because the Guidelines sentencing ranges in those cases were lower than the advisory range here. Gov. at 12; *United States v. Ego Onaga*, No. 19-cr-061(WFK) (E.D.N.Y.) (Kuntz, J.); *United States v. Scott*, No. 20-cr-051, 2023 WL 4758766 (WFK) (E.D.N.Y.) (Kuntz, J.). Dela's sentencing range is higher here, however, because of the loss amount from which others—not she—apparently benefitted, not because of the culpability of her conduct. When comparing Onaga's and Scott's conduct with Dela's, those defendants acted in ways that are more culpable. Onaga was a therapist who defrauded a New York State program that provided remedial services to developmentally delayed children. She earned a similar amount of money to Dela but, unlike Dela, she acted alone without direction. Scott defrauded a concert orchestrated by a charitable

organization founded by families of victims of the Sandy Hook Elementary School shooting. Neither received an incarcerative sentence.

As to *Pangelinan*, a case that has comparable facts to those presented here, the government offers no meaningful distinction. Gov. at 12; *United States v. Pangelinan*, No. 16-cr-1409 (S.D. Cal.). There the defendant participated in similar conduct to Dela, served in a similar role to Dela, received more money from his conduct than Dela, and had a higher Guidelines sentencing range.

The government also perplexingly asserts the *Pangelinan* case is distinguishable because in that case the court departed downward because the "kingpin" of the case had cooperated and already pleaded guilty. Gov. at 12. The governemnt argues that here "no other defendant has received any sentence justifying a relatively lower sentence for Saidazim." Gov. at 12. Dela, however, should not be penalized for accepting responsibility promptly and pleading guilty before her co-defendants, allowing the government to save time and effort in discovery and litigation. As the *Pangelinan* court did, this Court should sentence Dela to time served.

## III. Forfeiture and Restitution

As noted in Dela's sentencing submission, the Court has the authority to enter a "hybrid" restitution order under which Dela's restitution would be capped at an amount reflective of her minor role and limited earnings. Mem. at 46 (citing *United States v. Yalincak*, 30 F.4th 115 (2d Cir. 2022)). If she is held jointly and severally liable for the full amount it could, in effect, bind her to restitution payments—for money she did not receive—for the rest of her life.

The government did not address this argument in its submission. Rather, it summarily requested that the Court order Dela to pay $27,242,706.78 in restiution and noted that it "has no

objection to that restitution obligation being joint and severally liable with any of the other convicted Defendants." Gov. at 14. For the reasons stated in Dela's sentencing submission, the Court should enter a hybrid restitution order and hold that the payment of $88,000 Dela has volunteered to make satisfies her restiution obligation. Mem. at 46-47. Dela and the government are discussing how the amount may be paid in advance of or at sentencing. Any further requirement to pay restitution beyond $88,000 is not only unjustified by the facts, but also would compromise Dela's ability to rebuild her life after the conclusion of this case.

As to forfeiture, the government claims that "it is undisputed that the defendant received at least $88,000 in payment from the scheme." Gov. at 14. As noted in Dela's sentencing submission, however, the full $88,000 is not "attributable to criminal activity" because "[Dela] spent months working at the company without any knowledge of illegal activity" and "[h]er job entailed legitimate tasks for a personal assistant—such as arranging for her boss's travel or buying gifts for his family." Mem. at 31. The Court should deny the government's request to forfeit this amount, and Dela's payment of $88,000 should satisfy her restitution obligation.

* * *

The Court should reject the government's invitation that your Honor abandon his important judgment and discretion and apply the Sentencing Guidelines mechanically without consideration of the many undisputed facts that show the current advisory Guidelines range vastly overstates the seriousness of Dela's offense. Although Dela in no way seeks to discount her role in the offense conduct or the poor choices that she made, the undisputed facts show that she had an extremely limited role as a personal assistant, did not share in the profits, acted only at the direction of others, and had no decision making authority. [REDACTED]

Dela has accepted responsibility for her conduct and has—during the past two and a half years under extraordinarily difficult conditions that separated her from her family—dedicated herself to rehabilitation. Dela has taken the Court's admonitions to heart, and she has shown that she is worthy of its trust. Her counsel is extremely proud of her rehabilitation and the steps she has taken to continue to improve herself. [REDACTED]

Respectfully submitted,

*/s/ Robert J. Anello*

Robert J. Anello

Cc: All counsel (by ECF)